8 F.3d 822
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Memphis VANDYKE, Petitioner,
v.
VANDYKE BROTHERS Coal Company; Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 No. 92-2567.
 United States Court of Appeals,
Fourth Circuit.
 Submitted: July 13, 1993.
Decided: October 20, 1993.
 
 On Petition for Review of an Order of the Benefits Review Board.
 Memphis VanDyke, Petitioner Pro Se. Harry Ashby Dickerson, Penn, Stuart, Eskridge & Jones, Kathleen Mary Bole, Barbara J. Johnson, United States Department of Labor, for Respondents.
 Ben. Rev. Bd.
 VACATED AND REMANDED
 Before WIDENER and LUTTIG, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Memphis VanDyke appeals from a Benefits Review Board (Board) decision affirming an administrative law judge's (ALJ) decision to deny his application for benefits under the Black Lung Benefits Act (Act), as amended, 30 U.S.C.A. §§ 901-45 (West 1986 & Supp. 1992). Our review of the administrative record leads us to vacate the decision of the Board and remand this case for further consideration.
 
 
 2
 The ALJ, evaluating this claim under Part 718 of the applicable regulations, did not specifically address whether the miner established the existence of pneumoconiosis or a totally disabling respiratory impairment, but determined that he failed to prove that whatever respiratory impairment he might have was "due to" pneumoconiosis. In finding no causal link between disability and pneumoconiosis, the ALJ rejected Dr. Rasmussen's opinion that the miner's respiratory impairment was attributable to both his cigarette smoking and his coal dust exposure. Dr. Rasmussen stated that he could not separate the contributions of each to the miner's impairment, but that given the absence of an overt obstructive ventilatory impairment, he was inclined to feel that the impairment was more characteristic of coal workers' pneumoconiosis than cigarette smoking.
 
 
 3
 In order to prove that his totally disabling respiratory impairment was "due to" pneumoconiosis, the miner need only show that pneumoconiosis was at least a contributing cause of the impairment. See Hobbs v. Clinchfield Coal Co., 917 F.2d 790 (4th Cir. 1990); Robinson v. Pickands Mather & Co., 914 F.2d 35 (4th Cir. 1990). The ALJ rejected Dr. Rasmussen's finding of causation on the ground that it was too equivocal as to whether the miner's impairment was due to cigarette smoking or coal dust exposure. We conclude, however, that whereas Dr. Rasmussen's opinion might have been equivocal regarding the degree to which smoking and pneumoconiosis contributed, respectively, to the miner's impairment, his opinion unequivocally stated that pneumoconiosis was at least a contributing cause of the miner's impairment. Since this is all that Hobbs and Robinson require, we find that the ALJ erred by finding Dr. Rasmussen's report insufficient to establish causation.
 
 
 4
 This error would be harmless if the miner were unable to establish the existence of a totally disabling respiratory impairment. In this case, however, although the ALJ evaluated the evidence relevant to the issue of disability, he did not, ultimately, specifically resolve the issue. Moreover, we find that the ALJ committed error in weighing the blood gas studies of record, which are highly relevant to this issue.
 
 
 5
 The record contains six blood gas studies, two of which produced values indicating total disability under the regulatory criteria. See 20 C.F.R. § 718.204(c)(2) (1991). The ALJ found this evidence insufficient to establish total disability because only the most recent study, conducted in June 1990, produced values that were"far below regulatory values," and, in any event, he found this study to be "an aberation [sic]," because the values it produced varied greatly from the values produced by a blood gas study conducted in May 1990.
 
 
 6
 In the absence of rebutting evidence, a blood gas study indicates total disability if it produces values which meet the values delineated in Appendix C of Part 718. It is not necessary that those values be any lower than the figure listed in the Appendix. Thus, the fact that a study produces values which only marginally qualify provides no basis for concluding that it is not indicative of the presence of a totally disabling respiratory impairment. To the contrary, depending upon the miner's exertional requirements, even a non-qualifying study might indicate disability, since a study can reveal abnormalities without producing qualifying values.
 
 
 7
 A claimant's qualifying studies constitute affirmative evidence that a totally disabling respiratory impairment exists, and should not be discounted based on the failure to surpass the regulatory criteria by any degree. To hold otherwise would place upon claimants a greater burden than that which is imposed upon them by the regulations. We therefore conclude that the ALJ erred by discounting VanDyke's qualifying evidence on this basis.
 
 
 8
 We also find inaccurate the ALJ's characterization of the miner's June 1990 blood gas study as "an aberation [sic]." While an ALJ could rationally reject as an aberration a single study which produces values radically deviant from the values produced by several other studies, it is illogical to reject one study merely because its results differ significantly from another essentially contemporaneous study. The miner's June 1990 blood gas study produced, at rest, a PCO2 value of 33.2 and a PO2 value of 58.8. A post-exercise test produced a PCO2 value of 32.7 and a PO2 value of 58.9. The May 1990 blood gas study produced, at rest, a 36 PCO2 value and a 67 PO2 value. The post-exercise portion of the study produced a PCO2 of 32 and a PO2 of 93.
 
 
 9
 While the post-exercise PO2 values of these two tests differ significantly, the results of the June study more closely approximate the values produced by the remaining studies of record. The blood gas studies all produced PCO2 values in the low to mid-thirties range and the majority of the studies produced corresponding PO2 values between 65 and 70. The PO2 values of 59 produced by the June 1990 study were much closer to this range than the 93 PO2 value produced by the post-exercise portion of the May 1990 study. The May study is therefore more aberrant than the June study.
 
 
 10
 We note that the resting values of the May 1990 study are in relative conformity with the remaining blood gas studies, but this is because those values were close to qualifying values, and the record contains two additional studies that produced qualifying values and a third study that was only barely non-qualifying. We therefore vacate the decision of the Board and remand this case to the Board for further remand to the ALJ for further consideration of the evidence consistent with this opinion. We dispense with oral argument since the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 VACATED AND REMANDED